IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BONELL, individually and on behalf of similarly situated individuals, | ) ) ) | No. 19-cv-02339 |
| *Plaintiff*, | ) ) ) | Hon. John Robert Blakey |
| v. | ) ) | |
| COFFEE MEETS BAGEL, INC., a Delaware corporation, | ) ) ) | |
| *Defendant.* | ) | |

**JOINT INITIAL STATUS REPORT**

Plaintiff John Bonell ("Plaintiff"), individually and on behalf of all similarly situated individuals, and Defendant Coffee Meets Bagel, Inc. ("CMB") (together, the "Parties"), hereby submit the following Joint Initial Status Report.

**A.** **Type of Initial Status Report:** This Initial Status Report is submitted jointly by Plaintiff and Defendant.

**B.** **Service of Process:** N/A.

**C.** **Nature of the Case**

    **1.** **Attorneys of record, and lead trial counsel, for each party.**

    **For Plaintiff:** Jad Sheikali (lead trial counsel) and David L. Gerbie of McGuire Law, P.C.

    **For Defendant**: Steven P. Mandell (lead trial counsel) of Mandell Menkes LLC; Tyler Newby (*pro hac vice* to be submitted) and Matthew Becker (*pro hac vice* to be submitted) of Fenwick & West LLP.

    **2.** **Basis for federal jurisdiction.**

    This Court has jurisdiction pursuant to 28 U.S.C. §1446 and the Class Action Fairness Act ("CAFA"), as described in Defendant's Notice of Removal (Dkt. 1), because the putative class includes over 100 members, minimal diversity exists, and the alleged amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

The Complaint alleges that "over six million (6,000,000)" individuals were injured by Defendant's actions or omissions alleged in the Complaint, and that the class size consists of "thousands, if not more" individuals. (Compl. ¶¶ 3, 31), clearly satisfying CAFA's numerosity requirement. Additionally, because Plaintiff's domicile is Illinois and Defendant is a citizen of Delaware and California, minimal diversity exists. (Dkt. 1, ¶ 18). Finally, the CAFA minimum amount in controversy is met. As alleged, Plaintiff seeks, *inter alia*, both monetary damages and the furnishing of fraud monitoring on behalf of the class (Compl., ¶ 100). Fraud monitoring services often cost roughly $10.00 per month (Dkt. 1, ¶ 14). Thus, even if the Court determined that Defendant was required to furnish one month of fraud monitoring to each class member, the CAFA amount in controversy would be easily met.

**3.     Nature of the claim(s) and any counterclaim(s).**

This is a putative class action complaint in connection with an alleged series of data breaches suffered by Defendant, culminating in a period of "Data Vulnerability." Plaintiff alleges in his Complaint that, due to the actions and inactions of Defendant leading up to, surrounding, and following the subject Data Vulnerability, the PII of Plaintiff and over 6,000,000 class members was exposed to unauthorized third-parties.

Plaintiff's Complaint asserts Illinois Consumer Fraud Act ("ICFA") claims (Count I), Breach of Contract claims (Count II), Breach of Implied Contract claims (Count III), and Negligence claims (Count IV).

There are currently no pending counterclaims, crossclaims, or third-party actions.

**4.     Major Legal and Factual Issues.**

    a.   Whether Defendant implemented reasonable cybersecurity prevention, detection, mitigation, and notification protocols;

    b.   Whether Defendant implemented reasonable cybersecurity policies concerning the selection of third-party vendors and/or third-party vendor software;

    c.   Whether Defendant had a legal duty to protect the confidentiality of information about Plaintiff alleged to have been exposed in the data vulnerability alleged in the Complaint.

    d.   When Defendant became aware of the data vulnerability alleged in the Complaint;

    e.   Whether Plaintiff has experienced any damages proximately caused by the data vulnerability alleged in the Complaint;

    f.   Whether Plaintiff reasonably mitigated his damages;

g. The number of individuals impacted by the data vulnerability alleged in the Complaint;

h. Whether Defendant implemented reasonable cybersecurity policies to prevent, detect, and mitigate data vulnerabilities in its forums software;

i. Whether any express or implied contracts exists between Plaintiff and Defendant;

j. Whether the parties entered an express or implied agreement whereby "Defendant agreed to safeguard and prevent the unauthorized disclosure of Plaintiff's and the Class members' PII" as alleged in the Complaint;

k. Whether and which types of personal information was exposed through the data vulnerability alleged in the Complaint;

l. Whether Plaintiff's information allegedly publicly exposed by the data vulnerability alleged in the Complaint was already publicly accessible through legitimate means;

m. Whether venue should be transferred to the U.S. District Court for the District of Delaware pursuant to a forum selection provision in Defendant's Terms of Service in effect when Plaintiff created an account on Defendant's service;

n. Whether Plaintiff's claims, and Defendant's defenses to those claims are typical of the claims and defenses of the class, particularly as to whether Plaintiff's information allegedly exposed by the data vulnerability alleged in the Complaint was already publicly accessible through legitimate means;

o. Whether individual issues of law or fact predominate over issues common to the class, particularly as to damages and as to whether the information of class members allegedly exposed by the data vulnerability alleged in the Complaint were publicly available before the data vulnerability.

**5.     Type and Calculation of Damages.**

Plaintiff has defined the putative class and sub-class as:

**The Class** All individuals whose PII was in the possession of Defendant, or any of their subsidiaries and/or agents, during the Data Vulnerability. (Compl. ¶ 30).

**The Illinois Subclass**: All individuals in Illinois whose PII was in the possession of Defendant, or any of their subsidiaries and/or agents, during the Data Vulnerability. (*Id.*).

3

>On behalf of himself and the putative classes, Plaintiff seeks actual, statutory, compensatory and/or punitive damages, as well as injunctive relief requiring Defendant to implement commercially reasonable cybersecurity practices (Compl. ¶ 65). Plaintiff also seeks an order requiring Defendant to furnish, for a reasonable period, fraud monitoring and mitigation services to Plaintiff and the classes (*Id.*).

**D.** **Pending Motions and Case Plan**

**1.** **Pending Motions.** There are currently no pending motions. Defendant's responsive pleading deadline is May 13, 2019, and Defendant has indicated that it will file a motion to dismiss pursuant to Fed. R. Civ. P. 12, or, in the alternative, transfer pursuant to 28 U.S.C. 1404. Defendant has also indicated that it will file a motion to extend the page limit for the aforementioned motion to dismiss and to transfer, and Plaintiff does not oppose this motion to extend the page limit.

**2.** **MIDP Compliance.** The Parties have reviewed and conferred regarding their respective obligations under the Mandatory Initial Discovery Pilot Program ("MIDP"). Because Defendant will be filing a Rule 12 motion in lieu of answer, under the revised MIDP Standing Order, the Parties' MIDP Initial Disclosure obligations will not yet be triggered. The Parties will continue to regularly confer regarding their MIDP obligations.

**3.** **Proposed Discovery Plan.** The Parties' respectfully request that fact discovery is stayed pending a decision on Defendant's motion to dismiss and, if the case is not dismissed in its entirety, will commence after the deadline for the Parties to exchange their MIDP disclosures following a decision on the motion to dismiss.

>**a.** **Deadline for Rule 26(a)(1) disclosures, or why Rule 26(a)(1) disclosures are not appropriate.**
>
>In light of the Parties' respective obligations pursuant to the Mandatory Initial Discovery Pilot Program ("MIDP"), the Parties do not think that Fed. R. Civ. P. 26(a)(1) disclosures are necessary.
>
>**b.** **Deadline for issuing written discovery requests.**
>
>Within twenty-one (21) days after the Parties' MIDP initial disclosures.
>
>**c.** **Deadline for completing fact discovery.**
>
>The Parties anticipate they will need twelve (12) months from the date of decision on Defendant's forthcoming motion to dismiss to complete fact discovery.
>
>**d.** **Whether discovery should proceed in phases.**
>
>At this time, the Parties do not believe discovery should proceed in phases.

4

  **e. Whether expert discovery is contemplated and, if so, deadlines for Rule 26(a)(2) disclosures and expert depositions.**

Plaintiff to comply with Fed. R. Civ. P. 26(a)(2) by 30 days after the close of fact discovery;

Defendant to comply with Fed. R. Civ. P. 26(a)(2) by 60 days after the close of fact discovery;

Expert discovery to be completed by 90 days after the close of expert discovery. This is also the deadline to supplement MIDP disclosures.

  **f. Deadline for amending the pleadings and bringing in other parties.**

Within twenty-one (21) days following the close of fact discovery.

  **g. Deadline for filing dispositive motions.**

Plaintiff must file any <u>motion for class certification</u> by 30 days after the close of expert discovery.

Defendant must file any opposition 30 days thereafter.

Plaintiff must file any reply 14 days thereafter.

<u>Summary Judgment motions</u> to be filed by 30 days after the Court's ruling on Plaintiff's motion for class certification.

Any opposition is due 30 days thereafter.

Any reply is due 21 days thereafter

**4. Whether there has been a jury demand.**

Yes.

**5. Estimated length of trial.**

The Parties anticipate the length of trial to be five (5) days, depending on class certification issues.

**E. <u>Settlement</u>**

 **1. Describe settlement discussions to date and whether those discussions remain ongoing.**

5

The Parties have not discussed the possibility of settlement at this time but will continue to maintain open lines of communications if and when settlement discussion becomes appropriate.

**2.     Whether the parties request a settlement conference.**

At this time, the Parties do not request a settlement conference, but will alert the Court should they request a settlement conference at a future date.

**F.     Magistrate Judge**

**1.     Whether the parties consent to proceed before a magistrate judge for all purposes.**

The parties do not consent to proceed before a magistrate for all purposes.

**2.     Any particular matter that already have been referred to the magistrate judge, and the status of those proceedings.**

No matters have been referred to the magistrate judge at this time.

Dated: May 13, 2019

JOHN BONELL, individually and on behalf of a class of similarly situated individuals

By: /s/ *Jad Sheikali*
*One of Plaintiff's Attorneys*

Evan M. Meyers
Jad Sheikali
**MCGUIRE LAW, P.C.**
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
jsheikali@mcgpc.com

*Attorneys for Plaintiff and the putative Classes*

Respectfully Submitted,

COFFEE MEETS BAGEL, INC.

By: /s/ *Steven P. Mandell*
*One of Defendant's Attorneys*

Steven P. Mandell (ARDC #6183729)
**MANDELL MENKES LLC**
1 N. Franklin, Suite 3600
Chicago, IL 60606
Tel: (312) 251-1000
smandell@mandellmenkes.com

Tyler Newby (*pro hac vice* to be submitted)
Matthew Becker (*pro hac vice* to be submitted)
**FENWICK & WEST LLP**
555 California St., 12th Fl.
San Francisco, CA 94104
Tel: (415) 875-2300
tnewby@fenwick.com
mbecker@fenwick.com

*Attorneys for Defendant Coffee Meets Bagel, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 13, 2019, I caused the foregoing *Joint Status Report* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Steven P. Mandell*