# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BONELL, individually and on behalf of a class of similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:19-cv-02339 |
| | ) | |
| v. | ) | |
| | ) | Honorable John Robert Blakey |
| COFFEE MEETS BAGEL, INC., a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT COFFEE MEETS BAGEL, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO TRANSFER
PLAINTIFF'S CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ....................................................................................................2

    A.     Coffee Meets Bagel, Inc.'s Dating App. ...............................................2

    B.     Plaintiff Downloaded the Free CMB App, Signed Up for the CMB
           Service, and Agreed to the Terms of Service. ........................................3

    C.     Coffee Meets Bagel Suffers a Data Breach, in Which Only the Names
           and Email Addresses of Users Are Stolen...............................................3

    D.     Plaintiff Files Suit. ...............................................................................4

SUMMARY OF PLAINTIFF'S CLAIMS..........................................................................4

STANDARD OF REVIEW..................................................................................................5

I.      MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(**b**)(6).............................5

II.     MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404.....................................5

ARGUMENT........................................................................................................................6

I.      PLAINTIFF'S ICFA CLAIM FAILS BECAUSE THERE IS NO PLAUSIBLE
      BASIS UPON WHICH PLAINTIFF CAN ALLEGE INFORMATION OTHER
      THAN NAMES AND EMAIL ADDRESSES WERE ACCESSED, AND CMB
      EXPLICITLY DISAVOWED ANY GUARANTEE OF SECURITY. ...........................6

    A.     Names and Email Addresses Alone do not Qualify as "Personal
           Information" Under the PIPA.................................................................7

    B.     Plaintiff Does Not Allege Deception with Particularity, and CMB
           Explicitly Warns Users That it Cannot Guarantee the Security of Their
           Information. ............................................................................................8

    C.     Plaintiff Has Not Suffered an Economic Injury. ................................10

II.     PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE THE
      CONTRACT DOES NOT GUARANTEE THE SECURITY OF USER DATA. ..........11

III.    PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM FAILS BECAUSE
      THERE IS AN EXPRESS CONTRACT THAT EXPLICITLY PRECLUDES
      THE CLAIM THAT PLAINTIFF ALLEGES...............................................................12

## TABLE OF CONTENTS
### (Continued)

Page

IV. PLAINTIFF'S NEGLIGENCE CLAIM FAILS BECAUSE HE ASSUMED THE
RISK OF DATA BREACH; BECAUSE OF THE ECONOMIC LOSS RULE;
AND BECAUSE PLAINTIFF HAS NOT SUFFERED A COGNIZABLE
HARM. ................................................................................................................13

    A. Plaintiff Expressly Assumed Any Risk of the Possible Disclosure of
His Name and Email Address. ............................................................14

    B. Plaintiff's Alleged Pecuniary Injuries Fail the Economic Loss Rule. ................15

    C. Plaintiff Fails to Allege a Basis for Recovery for Mental Anguish. ...................16

V. PLAINTIFF'S CLAIMS SHOULD BE TRANSFERRED TO DELAWARE. ..............17

    A. The Forum Selection Clause in the CMB Terms of Service is
Unambiguous and Encapsulates Plaintiff's Claims. ...........................................18

    B. CMB's Forum Selection Clause is Valid and Enforceable. ...............................18

    C. When a Valid Forum Selection Clause Exists, Transfer is Required in
All but the Most Exceptional Circumstances. ....................................................21

CONCLUSION.....................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison v. CRC Insurance Services, Inc.*,
    No. 10 C 3313, 2010 WL 5060261 (N.D. Ill. Dec. 6, 2010) ................................................. 18

*Amoco Oil Co. v. Mobil Oil Corp.*,
    90 F. Supp. 2d 958 (N.D. Ill. 2000) ................................................................................... 22

*Arion LLC v. LMLC Holdings, Inc.*,
    No. 18-c-5904, 2018 WL 6590533 (N.D. Ill. Dec. 14, 2018) ........................................ 22, 23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 5, 7, 11

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ........................................................................................... *passim*

*Boone v. MB Fin. Bank, N.A.*,
    2019 U.S. Dist. LEXIS 63513 (N.D. Ill. Apr. 12, 2019) ............................................ 8, 9, 10

*Calanca v. D & S Manufacturing Co.*,
    157 Ill. App. 3d 85 (1st Dist. 1987) ................................................................................... 19

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) ............................................................................................................ 19

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
    887 F.3d 803 (7th Cir. 2018) ........................................................................................ 8, 9

*Compass Environmental, Inc. v. Polu Kai Services, LLC*,
    379 Ill. App. 3d 549 (1st Dist. 2008) ................................................................................. 19

*Cozzi Iron and Metal, Inc. v. U.S. Office Equipment, Inc.*,
    250 F.3d 570 (7th Cir. 2001) ............................................................................................ 8

*Duffy v. Midlothian Country Club*,
    135 Ill.App.3d 429 (1st Dist. 1985) ................................................................................... 15

*Fleming & Hall v. Cope*,
    30 F. Supp. 2d 459 (D. Del. 1998) ..................................................................................... 20

*Gadsby v. Heath Ins. Admin. Inc.*,
    168 Ill. App.3d 460 (2d Dist. 1988) ................................................................................... 13

*Harris v. Walker*,
    119 Ill.2d 542 (1988) ........................................................................................................ 15

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*,
　437 F.3d 606 (7th Cir 2006) ................................................. 19

*IFC Credit Corp. v. Rieker Shoe Corp.*,
　378 Ill. App. 3d 77 (1st Dist. 2007) ...................................... 20

*In re McGraw-Hill Global Educ. Holdings LLC*,
　909 F.3d 48 (3rd Cir. 2018) .................................................. 20

*In re Michaels Stores Pin Pad Litig.*,
　830 F. Supp. 2d 518 (N.D. Ill. 2011) ............................... 10, 11, 15, 16

*In re VTech Data Breach Litig.*,
　2018 U.S. Dist. Lexis 65060 (N.D. Ill. Apr. 2018) ............... 13

*J.F. Elec., Inc. v. HD Supply, Inc.*,
　2013 IL App (5th), 485275 ................................................... 19

*Jackson v. Payday Fin., LLC*,
　764 F.3d 765 (7th Cir. 2014) ............................................... 19

*Kapoulas v. Williams Ins. Agency, Inc.*,
　11 F.3d 1380 (7th Cir. 1993) ............................................... 16

*Katz-Crank v. Haskett*,
　843 F.3d 641 (7th Cir. 2016) ............................................. 5, 11

*Kurz v. EMAK Worldwide, Inc.*,
　464 B.R. 635 (D. Del. 2011) ................................................ 20

*Lewis v. Citgo Petroleum Corp.*,
　561 F.3d 698 (7th Cir. 2009) ........................................... 16, 17

*Liston v. King.Com, Ltd.*,
　254 F. Supp. 3d 989 (N.D. Ill. 2017) ..................................... 9

*Majca v. Beekil*,
　289 Ill.App.3d 760 (1997) ................................................... 17

*Marcatante v. City of Chicago*,
　657 F.3d 433 (7th Cir. 2011) ............................................... 13

*McCoy v. Gamesa Tech. Corp.*,
　2012 U.S. Dist. LEXIS 9278 (N.D. Ill. Jan. 26, 2012) ........... 19

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    91 Ill. 2d 69, 435 N.E.2d 443 (Ill 1982) .............................................................................. 15

*Mueller v. Apple Leisure Corp.*,
    880 F.3d 890 (7th Cir. 2018) ................................................................................... 6, 21

*Otis v. Demarasse*,
    886 F.3d 639 (7th Cir. 2018) ............................................................................................ 5

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010) .......................................................................................... 22

*Santana v. Cook Cnty. Bd. of Review*,
    679 F.3d 614 (7th Cir. 2012) ............................................................................................ 5

*The Bremen v. Zapata Off Shore Co.*,
    407 U.S. 1, 18 (1972) ...................................................................................................... 19

**STATUTES**

735 ILCS 5/2-606 ................................................................................................................ 12

815 ILCS 530/5 ................................................................................................................. 6, 8

815 ILCS 530/20 .............................................................................................................. 7, 8

28 U.S.C. § 1332 .................................................................................................................. 4

28 U.S.C. § 1404 .................................................................................................................. 5

28 U.S.C. § 1404(a) ..................................................................................................... *passim*

28 U.S.C. § 1441 .................................................................................................................. 4

28 U.S.C. § 1446 .................................................................................................................. 4

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),
    815 ILCS 505/1, *et seq.* ............................................................................... *passim*

Illinois Personal Information Protection Act ("PIPA"),
    815 ILCS 530 ................................................................................................... *passim*

Uniform Commercial Code .......................................................................................... 15, 16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................8, 9

Fed. R. Civ. P. 12(B)(6) ...................................................................................................5

**OTHER AUTHORITIES**

Federal Court Management Statistics–Profiles, Reporting Period December 28,
  2018, pp. 14, 47 (Available at https://www.uscourts.gov/file/25679/download) ...................22

On February 11, 2019, Coffee Meets Bagel, Inc. ("CMB") discovered that an unauthorized party gained access to a partial list of information concerning the users of its free dating app and service. Fortunately, no user payment information, passwords, or other sensitive user information was obtained. The only information acquired by the malicious actors was users' names and email addresses. CMB promptly notified affected users just three days after verifying the incident. Almost as promptly, Plaintiff John Bonell, a user of CMB's service, filed this lawsuit against CMB on behalf of himself and putative nationwide and Illinois classes. Plaintiff alleges that the exposure of his name and email address has caused him to suffer "pecuniary and other non-pecuniary injury" and "mental anguish." Compl. ¶ 29. For this, he seeks compensation through claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of express contract, breach of implied contract, and negligence.

While CMB takes the data breach seriously and has responded appropriately, none of Plaintiff's claims concerning the breach have a legal footing. First, his name and email address, on their own, are not "personal information" under Illinois' Personal Information Protection Act ("PIPA"), and their exposure cannot provide a basis for his Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim. Nor has Plaintiff alleged any deceptive act or practice that could give rise to an ICFA claim.

Plaintiff's contract-based claims fare no better. Contrary to Plaintiff's allegation, CMB's written terms of service do not promise security and, to the contrary, disclaim it. Like all CMB users, Plaintiff agreed to the CMB Privacy Policy and Terms of Service (the "CMB Terms") before he was allowed to use the CMB app and services. That agreement explicitly warned him of the risk of his personal data being obtained by unauthorized third parties and said "we [CMB] cannot guarantee the security of your personal information." Plaintiff assumed this risk when he

1

chose to proceed with using the free CMB app and service and provide his information after agreeing to those terms.

Finally, Plaintiff's negligence claims fail under the economic loss doctrine. Plaintiff does not allege any bodily or property injury, and to the contrary, claims that his injuries are pecuniary and arise from the breach of a contract. Moreover, in entering that contract, Plaintiff expressly assumed the risk that his personal information could be exposed.

In the alternative to dismissal, this case should be transferred to the District of Delaware. In the agreement Plaintiff seeks to enforce, he agreed to resolve all disputes relating to his use of CMB and to his contract in the state and federal courts of Delaware, which is CMB's state of incorporation. That agreement is prima facie valid, and Plaintiff cannot show any basis for this Court to disregard it.

## STATEMENT OF FACTS

### A. Coffee Meets Bagel, Inc.'s Dating App.

CMB is a Delaware corporation, headquartered in California. Ex. A, Declaration of David Miller ("Miller Decl.") ¶ 1. CMB does not have any employees in Illinois. *Id.* ¶ 8. CMB offers a free smartphone app that connects users based on shared interests and other criteria, using an algorithm to provide a curated list of quality matches. *Id.* ¶ 3. CMB's app is available through the Apple iOS Store and the Google Play Store. *Id.* CMB offers its basic services to users for free, with the only requirement being that each user must first agree to CMB's Privacy Policy and Terms of Service, included on the app and at https://coffeemeetsbagel.com/terms. *Id.* ¶ 5.

CMB offers its basic services for free. *Id.* ¶ 3. In addition to its free services, CMB offers a Premium subscription that provides additional features, like activity reports and information about potential matches. *Id.* Users are not required to purchase a Premium subscription, or pay

any money to use the app and service. *Id.*

**B.      Plaintiff Downloaded the Free CMB App, Signed Up for the CMB Service, and Agreed to the Terms of Service.**

Plaintiff downloaded the free CMB app and signed up for a free CMB account on or about April 15, 2017. *Id.* ¶ 4. In his complaint, Plaintiff acknowledges that he entered into an express agreement with CMB. Compl. ¶ 41. A copy of the CMB Terms as it appeared when Plaintiff agreed to it is attached as Exhibit 1 to the Miller Declaration. The CMB Terms includes a choice of law and forum selection clause, stating:

> *Controlling Law and Jurisdiction.* You agree that Delaware law (without giving effect to its conflicts of law principles) will govern this Agreement, the Site and the Services and that any dispute arising out of or relating to this Agreement, the Site or the Services will be subject to the exclusive jurisdiction and venue of the federal and state courts in Delaware.

(Miller Decl. ¶ 6, Ex. 1, p. 10). The CMB Terms also include a section warning users of the risk to personal data they provide:

> **Securing Your Personal Information**
> We endeavor to safeguard personal information to ensure that information is kept private. However, please be aware that unauthorized entry or use, hardware or software failure, the inherent insecurity of the Internet and other factors, may compromise the security of your personal information at any time. <u>As such, we cannot guarantee the security of your personal information.</u>

*Id.* at p. 4 (emphasis added). The CMB Terms further states: "*Risk Assumption and Precautions.* You assume all risk when using the Services . . . ." *Id.* at p. 6.


**C.      Coffee Meets Bagel Suffers a Data Breach, in Which Only the Names and Email Addresses of Users Are Stolen.**

On February 11, 2019, CMB discovered that an unauthorized party gained access to a limited list of user information. Fortunately, the data accessed comprised only users' names and email addresses prior to May 2018. After conducting an initial review, CMB notified affected

users by email just three days after discovering the data breach, on February 14, 2019. Compl. ¶ 15; Miller Decl. ¶ 7, Ex. 2. The email informed affected users that users' financial information or passwords had not been affected because CMB does not store that information. The notice further informed users that CMB had engaged forensic security experts to conduct a review of the CMB systems and infrastructure. *Id.*

### D. Plaintiff Files Suit.

On February 28, 2019, Plaintiff John Bonell filed this lawsuit in the Circuit Court of Cook County, Illinois. Plaintiff alleges that he has suffered harm because his "PII" (short for personally identifiable information) was stolen in the data breach. Compl. ¶ 4. However, Plaintiff fails to mention that the only factual basis for that allegation is the notice he received that only his name and email address were exposed. *See* Miller Decl. ¶ 7, Ex. 2. Plaintiff alleged that over six million CMB users were affected by the breach. On April 5, 2019, CMB removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff alleges four causes of action on behalf of himself and a putative nationwide class and Illinois subclass, all relating to the same data breach: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") (on behalf of only himself and the Illinois subclass); (2) breach of express contract; (3) breach of implied contract (pleaded in the alternative to the breach of express contract claim); and (4) negligence.

Although the complaint does not state what the express contract is that it refers to, Plaintiff alleges he has been a user of CMB (Compl. ¶ 3), and there is only one express agreement between CMB and its users: the CMB Terms. Miller Decl. ¶ 6.

As discussed below, it is unclear if Plaintiff intended his ICFA claim to allege a violation of the Illinois Personal Information Protection Act, 815 ILCS 530 ("PIPA"). The complaint does

not explicitly mention PIPA, but it does confusingly reference "*Section 530/20* of the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*." Compl. ¶ 36

(emphasis added). Although CMB believes that Plaintiff failed to plead any nascent PIPA claim

or element in accordance with federal pleading standards, to preserve judicial economy CMB

nonetheless addresses why PIPA is inapplicable even if pleaded properly.

## STANDARD OF REVIEW

**I.      MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6).**

A complaint must contain factual allegations that plausibly suggest a right to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should accept as true all facts alleged in

the complaint and draw reasonable inferences from those facts in Plaintiffs' favor, but the Court

is not required to accept as true legal conclusions. *Id.* at 678-79. Conclusory allegations that

merely recite the elements of a claim are also not entitled to a presumption of truth. *Katz-Crank*

*v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). In considering a motion to dismiss under Fed. R.

Civ. P. 12(b)(6), the Court reviews the complaint, exhibits attached to the complaint, and, if they

are central to the claims, documents referenced by the complaint. *Otis v. Demarasse*, 886 F.3d

639, 646 n.33 (7th Cir. 2018). The same is true of documents referenced in but not attached to

the complaint. *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012).

**II.     MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404.**

28 U.S.C. § 1404(a) provides that a court may transfer a civil action "[f]or the

convenience of parties and witnesses, in the interest of justice . . . to any other district or division

where it might have been brought or to any district or division to which all parties have

consented." A forum-selection clause "may be enforced through a motion to transfer under

§ 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59

(2013). "When the parties have agreed to a valid forum-selection clause, a district court should

ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62.

When deciding a § 1404(a) motion in the absence of a forum-selection clause, the court must evaluate both the convenience of the parties and various public-interest considerations, weighing whether a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice. *Id.* 62-3. But if a valid forum-selection clause governs the dispute, "the plaintiff's choice of forum merits no weight," the Court may not consider arguments about the parties' private interests, and "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63–64 (internal quotation marks omitted); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (applying *Atl. Marine Constr. Co.* and stating that forum selection clauses control except in unusual circumstances).

## ARGUMENT

I.  **PLAINTIFF'S ICFA CLAIM FAILS BECAUSE THERE IS NO PLAUSIBLE BASIS UPON WHICH PLAINTIFF CAN ALLEGE INFORMATION OTHER THAN NAMES AND EMAIL ADDRESSES WERE ACCESSED, AND CMB EXPLICITLY DISAVOWED ANY GUARANTEE OF SECURITY.**

Plaintiff's ICFA claim fails for three reasons. First, names and email addresses alone do not qualify as "personal information" under the PIPA, 815 ILCS 530/5, and therefore a data breach of only names and email addresses is not actionable under the PIPA as a predicate to a ICFA violation. Second, Plaintiff's ICFA argument also depends on his erroneous assertion that CMB told him and other putative class members that it would protect their personal information, when in fact CMB warned all users of security risks. Finally, Plaintiff does not plead an economic injury.

6

### A.    Names and Email Addresses Alone do not Qualify as "Personal Information" Under the PIPA.

As an initial matter, it is unclear from Plaintiff's complaint whether he alleges that CMB has violated the PIPA as a predicate offense to his ICFA claim. The complaint does not specifically allege a violation of PIPA anywhere in its text. However, at paragraph 36, the complaint reads: "Pursuant to _Section 530/20_ of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, _et seq_. ("ICFA"), Defendant was required to implement and maintain reasonable security measures to protect the Plaintiff's and the Illinois Subclass Members' PII." (emphasis added). There is no such "Section 530/20" of the ICFA. However, 815 ILCS 530/20 is a provision of _PIPA_ that reads "A violation of this Act constitutes an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act." CMB therefore assumes that Plaintiff intended to plead a violation of PIPA as a predicate violation for ICFA, but that Plaintiff failed to articulate it in the complaint.

Nonetheless, Plaintiff does not plead the elements required for a PIPA violation. Because Plaintiff has failed to plead the elements for a PIPA violation, and did not even properly cite the statute itself, Plaintiff has failed to state a cause of action to which CMB can reasonably respond, and that is reason alone to dismiss this claim. _See Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (a complaint must contain factual allegations that plausibly suggest a right to relief).

Additionally, the Complaint fails to plead CMB violated the PIPA because mere names and email addresses alone do not constitute "personal information" under the PIPA. Section 5 of PIPA defines "personal information" as either (1) a first and last name _in combination with_ a social security number, driver's license number, account number, medical information, health insurance information, or unique biometric data like a fingerprint; or (2) a user name or email address _in combination with_ the password or security question or answer that would permit

access to the online account. A name and email address in the absence of a password are not "personal information" under the PIPA. 815 ILCS 530/05.

Finally, the data vulnerability was not a "breach" under the PIPA. The PIPA defines a "breach" as the "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of *personal information* maintained by the data collector." *Id.* (emphasis added). Because the information obtained by the intrusion does not constitute "personal information," the intrusion was not a "breach" under the PIPA and therefore is not actionable under ICFA or otherwise. Plaintiff's claim for violation of ICFA should therefore be dismissed to the extent it relies on a predicate PIPA violation. 815 ILCS 530/20.

### B. Plaintiff Does Not Allege Deception with Particularity, and CMB Explicitly Warns Users That It Cannot Guarantee the Security of Their Information.

If, in the alternative, Plaintiff was attempting to plead a violation of ICFA by alleging CMB engaged in a deceptive act, the complaint fails to plead this claim with particularity as required by Fed. R. Civ. P. 9(b). Moreover, the very agreement that Plaintiff's contract claim is based on explicitly warns users that CMB does not guarantee the security of their data.

To state a deception claim under ICFA, a plaintiff must allege: (1) a deceptive act or practice by defendant; (2) that defendant intended plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; (4) plaintiff suffered actual damages; (5) which were proximately caused by the deception. *Boone v. MB Fin. Bank, N.A.,* 2019 U.S. Dist. LEXIS 63513 *19 (N.D. Ill. Apr. 12, 2019) (citing *Cozzi Iron and Metal, Inc. v. U.S. Office Equipment, Inc.,* 250 F.3d 570, 576 (7th Cir. 2001)). Plaintiffs in a data breach class action alleging violation of ICFA must point to a deceptive guarantee about data security to state a claim under the act. *See Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*, 887 F.3d 803, 823 (7th Cir. 2018). Plaintiffs must also "prove that each and every consumer who seeks redress

8

actually saw and was deceived by the statements in question." *Id*. It is not enough to rely on a "market theory of causation" whereby plaintiffs rely on vague allegations that defendant had inadequate security practices that affected consumers. *Id.* at 822.

Finally, allegations of deceptive acts are subject to Fed. R. Civ. P. 9(b) and must be pleaded with particularity. *Boone v. MB Fin. Bank, N.A.,* 2019 U.S. Dist. LEXIS 63513 *20 (N.D. Ill. Apr. 12, 2019). To satisfy Rule 9(b), "the who, what, when, where, and how . . ." must be pleaded. *Id.*; *see also Liston v. King.Com, Ltd.,* 254 F. Supp. 3d 989 (N.D. Ill. 2017).

Plaintiff fails to plead his ICFA claim with particularity. In paragraph 37 of the complaint, Plaintiff states that CMB "represent[ed] to Plaintiff and the Illinois Subclass that it would not only implement commercially reasonable measures to protect their PII but also notify them if any security issues were to arise . . . ." Nowhere does Plaintiff state when, where, or how these "representations" were made, or who from CMB made them. Nor is it clear what these representations looked like. CMB is at a complete loss to understand what representations Plaintiff is referring to, considering that the CMB Terms says the exact opposite. Plaintiff has failed to state his claim with particularity as required by Rule 9(b).

Plaintiff also fails to plead that CMB intended Plaintiff to rely on these supposed representations. Because this is a necessary factor for a deception claim under ICFA, this is another independent reason to dismiss this claim. *See Boone v. MB Fin. Bank, N.A.,* 2019 U.S. Dist. LEXIS 63513 *19 (N.D. Ill. Apr. 12, 2019) (stating factors).

Moreover, at all relevant times CMB represented to Plaintiff and all of its users that it could not guarantee the security of the data they provided. The CMB Terms that Plaintiff agreed to on April 15, 2017 when he signed up to use the free Coffee Meets Bagel services states:

> [P]lease be aware that unauthorized entry or use, hardware or software failure, the
> inherent insecurity of the Internet and other factors, may compromise the security of your

personal information at any time. <u>As such, we cannot guarantee the security of your</u> <u>personal information.</u>

Miller Decl. ¶ 6, Ex. 1, p. 4 (emphasis added). The CMB Terms further states: "*Risk Assumption and Precautions.* You assume all risk when using the Services . . . ." *Id.* at p. 6. Plaintiff agreed to assume those risks to his data.

There was no "deception." CMB explicitly warned Plaintiff about the very circumstance upon which he bases his complaint. Plaintiff's ICFA claim should be dismissed with prejudice.

### C.    Plaintiff Has Not Suffered an Economic Injury.

Plaintiff has also failed to state an ICFA claim, because he has not alleged he suffered an economic injury. Under the ICFA, a plaintiff must have suffered actual, economic damages. *See In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526-27 (N.D. Ill. 2011) (explaining that plaintiff must allege a purely economic injury to recover under ICFA). Notably for data breach cases such as this one, neither costs incurred to pay for credit monitoring services nor the increased risk of future identity theft are considered actual damages, and they are only recoverable upon a finding of present injury. *Id.*

Plaintiff has not alleged any present economic injury in the complaint, nor is it even reasonable for Plaintiff to anticipate any economic injury from the disclosure of his name and email address. Plaintiff states only conclusory allegations regarding his injuries, and injuries that do not plead economic damages: Plaintiff states that he "has taken time to mitigate his risk of identity theft, including changing his account passwords and monitoring his credit and other financial information" and is fearful of identity theft or spam (Compl. ¶¶ 27-28), and that he has suffered "pecuniary injury in the form of expense to mitigate the disclosure and significantly increased risk of exposure of [personal information] to nefarious third parties", and alleges contract damages ("loss of the benefit of [his] bargain in creating [an] account[] with

Defendant") (Compl. ¶ 64). Plaintiff also vaguely alleges that he "experienced other pecuniary and non-pecuniary injury . . . including mental anguish." Compl. ¶ 29.

Plaintiff's conclusory allegations regarding suffering unnamed "pecuniary injury" and his alleged loss of "the benefit of the bargain" of his contract with CMB, do not adequately state a claim because they lack factual foundation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). His use of credit monitoring and fear of identity theft (including his claim of "mental anguish") are not actual damages recoverable in the absence of a present injury. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526-27 (N.D. Ill. 2011). Again, there is no factual allegation that he has suffered an economic harm as a result of the disclosure of his name and email. While Plaintiff also alleges loss of his "legally protected interest in the confidentiality and privacy of [his personal information]," this too is not an economic harm, it is an alleged statutory or common law interest.[1]

Plaintiff has not alleged, and cannot allege, any actual economic harm as a result of the data breach. His ICFA claim should be dismissed with prejudice.

## II. PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE THE CONTRACT DOES NOT GUARANTEE THE SECURITY OF USER DATA.

Plaintiff's breach of contract claim alleges that "Plaintiff and the Class members are parties to express agreements with Defendant whereby Plaintiff and the Class members provide their PII to Defendant in exchange for the ability to create and maintain accounts with Defendant. As part of these agreements, Defendant agreed to safeguard and prevent the unauthorized disclosure of Plaintiff's and the Class members' PII." Compl. ¶¶ 41-42.

Plaintiff does not state what "express agreement" he is referring to, nor does Plaintiff

---

[1] As noted above in Section I.A., it is possible that Plaintiff intended to argue a PIPA violation, but failed to plead it. Nonetheless, because mere names and email addresses do not on their own constitute "personal information" under PIPA, this data breach is not actionable under that law, and there is no basis for alleging that PIPA protects Plaintiff's name and email address.

attach any contract to the complaint.[2] However, there is only one agreement between CMB and its users – the CMB Terms – and that agreement does not state that CMB will "safeguard and prevent the unauthorized disclosure" of its users' PII. Miller Decl. ¶ 6. Quite the opposite: the agreement states that CMB "cannot guarantee the security of your personal information." The full CMB Terms that Plaintiff agreed to on April 15, 2017 are attached as Exhibit 1 to the Miller Declaration and is archived at

https://web.archive.org/web/20170513200349/https://coffeemeetsbagel.com/terms/. CMB requests that the Court take judicial notice of this agreement, as it is publicly available and referenced as the basis for Plaintiff's claim.

Plaintiff alleges that CMB breached this contract by failing to implement an adequate and reasonable data privacy and cybersecurity protocol and failing to detect the data vulnerability sooner. But as stated above, nowhere in the contract does CMB state that it will safeguard and prevent unauthorized disclosure of PII, and instead the contract warns users that CMB cannot guarantee the security of any information that users provide, and that CMB may suffer a malicious intrusion such as this one. The contract then requires users to assume these risks if they want to use the free CMB app and service.

Plaintiff's claim for breach of contract should be dismissed with prejudice because the contract does not include any terms that could support Plaintiff's claim.

## III. PLAINTIFF'S BREACH OF IMPLIED CONTRACT CLAIM FAILS BECAUSE THERE IS AN EXPRESS CONTRACT THAT EXPLICITLY PRECLUDES THE CLAIM THAT PLAINTIFF ALLEGES.

Although breach of implied contract can be pleaded in the alternative to a breach of express contract claim, where an express contract exists, it necessarily precludes the existence of

---

[2] Plaintiff originally filed his complaint in Illinois state court, where he was required to attach the written contract upon which he bases his claim. 735 ILCS 5/2-606.

an implied contract. *Marcatante v. City of Chicago*, 657 F.3d 433 (7th Cir. 2011) (citing *Maness v. Santa Fe Park Enters.*, Inc., 298 Ill. App. 3d. 1014, 1023 (1st Dist. 1998) (holding that an express contract negated the existence of any implied-in-fact contract)). "As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and implied contract for the same thing, existing at the same time." *Gadsby v. Heath Ins. Admin. Inc.,* 168 Ill. App.3d 460 (2d Dist. 1988). Here, the CMB Terms that Plaintiff agreed to explicitly state that CMB users' data may be at risk due to unauthorized entry and the inherent insecurity of the internet, and that CMB cannot guarantee the security of users' personal information. There cannot be an implied contract with opposite terms.

In the data breach case *In re VTech Data Breach Litig.*, the court dismissed the plaintiff's breach of implied contract claim against a company that offered online learning services, holding that the online service terms controlled because they covered the same subject as the alleged implied contract. 2018 U.S. Dist. Lexis 65060 *12 (N.D. Ill. Apr. 2018). Here, Plaintiff alleges an implied contract for the provision of CMB's app and services in the alternative, only "[t]o the extent it is found that Defendant did not have an express contract with Plaintiff and the Class members . . . ." Compl. ¶ 51. Because the CMB Terms are an express contract that governs the use of the CMB app and services and expressly addresses the subject matter of this lawsuit, Plaintiff's claim for breach of implied contract should be dismissed with prejudice.

## IV. PLAINTIFF'S NEGLIGENCE CLAIM FAILS BECAUSE HE ASSUMED THE RISK OF DATA BREACH; BECAUSE OF THE ECONOMIC LOSS RULE; AND BECAUSE PLAINTIFF HAS NOT SUFFERED A COGNIZABLE HARM.

Plaintiff's final cause of action fails because Plaintiff expressly assumed any risk of disclosure of his personal data, and he has not alleged any harm that is cognizable or actionable under a negligence claim.

Plaintiff alleges that CMB owed him a duty to implement a data privacy and

cybersecurity protocol to safeguard his information and prevent unauthorized access, and that CMB breached this duty. Compl. ¶¶ 60-62. Plaintiff further alleges that he suffered injury in the form of loss of his "legally protected interest in the confidentiality and privacy of [his personal information], the loss of the benefit of [his] bargain in creating [an] account[] with Defendant, and pecuniary injury in the form of expense to mitigate the disclosure and significantly increased risk of exposure of [personal information] to nefarious third parties." Compl. ¶ 64. However, because Plaintiff has also alleged a breach of contract, none of these are cognizable harms for negligence under the economic loss rule. And CMB cannot have owed a duty where it explicitly disavowed such duty through its contract with Plaintiff, and Plaintiff expressly assumed the risk.

**A.      Plaintiff Expressly Assumed Any Risk of the Possible Disclosure of His Name and Email Address.**

Plaintiff's claim is a matter of contract law, not tort law. Plaintiff entered into a bargain with CMB where CMB provided a free dating app and dating service, in exchange for which Plaintiff agreed to assume certain risks, one of which was the risk that his personal data could be stolen through an infiltration of CMB's computers by an unauthorized third party. After agreeing to the CMB Terms that warned him of this risk, Plaintiff now claims that CMB is negligent for failing to prevent the very risk he assumed.

Assumption of risk is a defense against a negligence claim, and entirely precludes a negligence claim in the case of express assumption of risk, where the assumption of risk is spelled out by contract agreed to by the parties:

> Under express assumption of risk, plaintiff and defendant explicitly agree, in advance, that defendant owes no legal duty to plaintiff and therefore, that plaintiff cannot recover for injuries caused either by risks inherent in the situation or by dangers created by defendant's negligence. Under the express form of the doctrine, defendants only sustain liability if their actions are construed as wanton, wilful [*sic*] or reckless, or if damages arise from an agreement deemed contrary to public policy.

14

*Duffy v. Midlothian Country Club*, 135 Ill.App.3d 429, 433 (1st Dist. 1985); *see also Harris v. Walker*, 119 Ill.2d 542, 548-550 (1988) (holding that plaintiff could not recover for negligence claim where parties expressly agreed that defendant should be released from any liability).

Plaintiff willingly proceeded with using CMB's app and services in spite of the risk that his name and email might be stolen, and therefore assumed the risk. Plaintiff also expressly assumed the risk by agreeing to the CMB Terms which contained that warning, as well as a provision that stated: "*Risk Assumption and Precautions.* You assume all risk when using the Services . . . ." Plaintiff has not alleged and has no basis to allege that CMB's actions were wanton, willful, or reckless, or that the agreement is contrary to public policy. Therefore, his negligence claim should be dismissed with prejudice.

### B.    Plaintiff's Alleged Pecuniary Injuries Fail the Economic Loss Rule.

Illinois' economic loss rule ("Moorman doctrine") bars recovery for purely economic losses under a tort theory of negligence unless an exception applies. *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69 (1982)). "The rationale underlying this doctrine is that tort law affords the proper remedy for loss arising from personal injury or damages to one's property, whereas contract law and the Uniform Commercial Code provide the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property." *Id.* Illinois law recognizes three exceptions to the economic loss rule: (1) where plaintiff sustains personal injury or damage to personal property due to a sudden or dangerous occurrence; (2) where plaintiff's damages were proximately caused by defendant's intentional, false representation; and (3) where plaintiff's injuries were caused by the negligent misrepresentation of someone in the business of supplying advice in business transactions. *Id.*

In *In re Michaels Stores Pin Pad Litig.*, this court held that the plaintiffs' negligence and

negligence per se claims stemming from a data breach were barred by Illinois' economic loss doctrine. *Id.* at 531. Likewise here, Plaintiff's negligence claim is barred by the doctrine, because Plaintiff alleges primarily economic losses: "pecuniary injury in the form of expense to mitigate the disclosure and significantly increased risk of exposure of [personal information] to nefarious third parties," including contract damages ("loss of the benefit of [his] bargain in creating [an] account[] with Defendant"). Compl. ¶ 64.

Although Plaintiff also alleges loss of his "legally protected interest in the confidentiality and privacy of [his personal information]," Plaintiff does not cite any basis for a protection of the confidentiality and privacy of his name and email address – particularly where he contractually assumed the risk that they might be stolen.[3] *Id.*

### C.   Plaintiff Fails to Allege a Basis for Recovery for Mental Anguish.

Plaintiff alleges, without any supporting facts, that he has suffered "mental anguish" from a third party's access to his name and email address without his permission. Mental anguish is not recoverable in negligence cases absent an accompanying physical injury to the plaintiff (the "impact" rule), or unless the plaintiff was a bystander who was "in a zone of *physical* danger and who, because of the defendant's negligence, [had] reasonable fear for [his] own safety which caused them emotional distress, and who could demonstrate *physical* injury or illness resulting from the emotional distress." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 702-03 (7th Cir. 2009) (quoting *Kapoulas v. Williams Ins. Agency, Inc.,* 11 F.3d 1380, 1382 (7th Cir. 1993) (emphasis added) (internal quotations omitted). Plaintiff has not alleged, and cannot allege, a physical injury to himself or to any individuals in physical proximity to him, and therefore he cannot recover for mental anguish under a negligence claim.

Additionally, Plaintiff has not alleged a cognizable injury for mental anguish because he

---

[3] See Section 1.A, above concerning PIPA.

has failed to plead facts showing that his mental anguish is anything other than a mild disturbance. To be cognizable, emotional distress must be "severe." *Id.* at 707-09 (holding that plaintiff's "mild anxiety that causes her to recheck her work, but that only minimally interferes with her everyday life and for which she has not sought treatment—does not rise to the level of severity required under Illinois law for an emotional injury to be compensable"); *see also Majca v. Beekil,* 289 Ill.App.3d 760 (1997) (requiring "medically verifiable manifestations of severe emotional distress" to limit false or magnified claims being brought to court, and concluding that plaintiff's reasonable fears were "not severe enough to justify compensation through the courts"). Plaintiff has not alleged facts suggesting that he has suffered severe emotional distress at the idea of his name and email having been acquired.

Accordingly, the Court should dismiss Plaintiff's negligence claim with prejudice.

## V.    PLAINTIFF'S CLAIMS SHOULD BE TRANSFERRED TO DELAWARE.

In the alternative, this action should be transferred to the District of Delaware because Plaintiff and CMB agreed to litigate any dispute concerning CMB's Terms of Service, website, or services in Delaware state or federal courts. The forum selection clause selecting Delaware venue appears in the very same agreement upon which Plaintiff bases his breach of contract claim. Because Plaintiff's complaint is based on the CMB Terms of Service, its website, and its services, Plaintiff's claims are subject to the forum selection clause.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a [28 U.S.C.] § 1404(a) motion be denied." *Atl. Marine Constr. Co.*, 571 U.S. at 62. Because the forum selection clause is valid and no extraordinary circumstances exist, Plaintiff's claims should be transferred to Delaware or dismissed with instructions to refile in the proper agreed venue.

**A.      The Forum Selection Clause in the CMB Terms of Service is Unambiguous and Encapsulates Plaintiff's Claims.**

There is only one express agreement between CMB and its users—the CMB Terms—and that agreement provides that disputes will be exclusively be brought in Delaware. Plaintiff implicitly admits that he agreed to the CMB Terms, both by bringing a breach of express contract claim that is predicated on the CMB Terms, and by alleging that "[a]s a precondition to using CMB's App, Plaintiff was required to provide his PII to CMB. Compl. ¶ 14.

The forum selection clause makes clear that Delaware is the exclusive forum for Plaintiff's claims. It states:

> *Controlling Law and Jurisdiction.* You agree that Delaware law (without giving effect to its conflicts of law principles) will govern this Agreement, the Site and the Services and that any dispute arising out of or relating to this Agreement, the Site or the Services will be subject to the exclusive jurisdiction and venue of the federal and state courts in Delaware.

(Miller Decl. ¶ 7, Ex. 1, p. 10).

In the context of forum selection clauses, other Illinois courts have broadly interpreted the term "relating to," covering claims beyond those sounding in contract. *See Allison v. CRC Insurance Services, Inc.*, No. 10 C 3313, 2010 WL 5060261, at *4 (N.D. Ill. Dec. 6, 2010). Here, where Plaintiff's claim for breach of contract is founded on the language in the Terms of Service, his claim for breach of implied contract is precluded by those Terms, and all of his claims relate to the service itself, he must bring these claims in Delaware.

**B.      CMB's Forum Selection Clause is Valid and Enforceable.**

Forum selection clauses are as enforceable as any other contract provision. "[E]ven in a contract between a business firm and a consumer . . . a forum selection clause is enforceable to the same extent as the usual terms of a contract, which mainly means unless it was procured by fraud or related misconduct." *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*,

437 F.3d 606, 610 (7th Cir 2006) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991)).

> To hold a forum selection clause unenforceable, the party opposing its enforcement must show that the clause is "unreasonable" under the circumstances by showing "that trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Calanca v. D & S Manufacturing Co.*, 157 Ill. App. 3d 85, 87-88 (1st Dist. 1987), quoting *The Bremen v. Zapata Off Shore Co.,* 407 U.S. 1, 18 (1972).

> Because the CMB Terms select Delaware law, the Court should look to Delaware to determine the validity of the forum selection clause. See *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) ("In contracts containing a choice of law clause, therefore, the law designated in the choice of law clause would be used to determine the validity of the forum selection clause,"); *see also McCoy v. Gamesa Tech. Corp.,* 2012 U.S. Dist. LEXIS 9278, *15 (N.D. Ill. Jan. 26, 2012) (explaining that Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy). Even if the Court were to apply Illinois law, forum selection clauses are *prima facie* valid in Illinois. *See, e.g.*, *Calanca* at 87; *J.F. Elec., Inc. v. HD Supply, Inc.*, 2013 IL App (5th), 485275, ¶¶ 9-13 (dismissing case where forum selection clause required "any legal action arising under or related to th[e] Agreement" to be brought in Cobb County, Georgia); *Compass Environmental, Inc. v. Polu Kai Services, LLC*, 379 Ill. App. 3d 549, 554 (1st Dist. 2008) (enforcing a forum selection clause); *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 86 (1st Dist. 2007) (enforcing forum selection clause requiring parties to litigate in the state

where the renter's principal office was located)).

In Delaware, federal law determines the validity of the forum selection clause. See *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3rd Cir. 2018) (explaining that the enforceability of a forum selection clause is a procedural issue and is governed by federal law in diversity cases). Under Delaware federal law, forum selection clauses are presumed valid and should be enforced unless the opposing party can show that enforcement is unreasonable under the circumstances. *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635 (D. Del. 2011). Fraud, undue influence, or overweening bargaining power render forum selection clauses unreasonable. *Id.* Absence of negotiation does not render a forum selection clause invalid. *Fleming & Hall v. Cope*, 30 F. Supp. 2d 459, 463-64 (D. Del. 1998).

Here, the forum section clause is *prima facie* valid, CMB has satisfied its requirements under 28 U.S.C. §1404(a)[4], and it is Plaintiff's burden to prove that enforcement is unreasonable under the circumstances because his agreement was the product of fraud, undue influence, or overwhelming bargaining power.[5] Plaintiff cannot meet his burden, because he assented to the CMB Terms willingly. The bargain was fair: CMB provides a free app and free dating service, with the possibility for Plaintiff to purchase additional premium features if he desires. In

---

[4] Specifically, the forum selection clause means that venue is proper in both the transferor and transferee court (where CMB is also a citizen), transfer is for the convenience of the parties and witnesses (as elected under the agreement), and transfer is in the interests of justice (as it fulfils the parties' contractual election).

[5] Alternatively, under the Illinois standard Plaintiff would have the burden to prove that enforcement of the forum selection clause would be *so unreasonable as to deprive him of his day in court*, considering the following factors: "(1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for." *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d at 86. Although CMB believes it is proper in this instance to apply Delaware law at the outset, CMB would also prevail under an Illinois law analysis.

exchange, Plaintiff agreed to a choice of law and forum selection clause, among other provisions designed to ensure that CMB can continue to provide a free product and service. CMB had no undue influence over Plaintiff, and he could have chosen to use any of the many other alternative online dating services.

Accordingly, the Court should enforce the forum selection clause.

### C. When a Valid Forum Selection Clause Exists, Transfer is Required in All but the Most Exceptional Circumstances.

When deciding a § 1404(a) motion in the absence of a forum-selection clause, the court must ordinarily evaluate both the convenience of the parties and various public-interest considerations, weighing whether a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice. *Atl. Marine Constr. Co.*, 571 U.S. at 62-63. But if a valid forum-selection clause governs the dispute, the clause "[should be] given controlling weight in all but the most exceptional cases," "the plaintiff's choice of forum merits no weight," and "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63–64 (internal quotation marks omitted); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (applying *Atl. Marine Constr. Co.* and stating that forum selection clauses control except in unusual circumstances). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient," and therefore a court may not consider arguments about the parties' private interests. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. at 64.

Instead, "a district court may consider arguments about public-interest factors only." *Id.* The Seventh Circuit states that those factors include: "docket congestion and likely speed to trial in the transferor and potential transferee forums ... each court's relative familiarity with the

relevant law ... the respective desirability of resolving controversies in each locale ... and the relationship of each community to the controversy." *Arion LLC v. LMLC Holdings, Inc.*, No. 18-c-5904, 2018 WL 6590533 at *4 (N.D. Ill. Dec. 14, 2018) (quoting *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (ellipses in original)).

Here, each of these factors either favor transfer to Delaware or are neutral, and therefore Plaintiff will not be able to meet his burden of showing that the factors present an exceptional circumstance in which transfer is inappropriate.

The National Judicial Caseload Profile maintained by the Administrative Office of the U.S. Courts shows that in December 2018 civil matters in the District of Delaware had an average of 28.7 months from filing to trial, while civil matters in the Northern District of Illinois had an average of 38.3 months from filing to trial. "Federal Court Management Statistics–Profiles," Reporting Period December 28, 2018, pp. 14, 47.[6] CMB Requests that the Court take judicial notice of this publicly available data created and maintained by the Administrative Office of the U.S. Courts. Accordingly, the likely speed to trial favors transfer to Delaware.

One of Plaintiff's claims is based on an Illinois statute, while the other three are based on common law. The CMB Terms includes a choice of Delaware law, so the majority of these claims should proceed under Delaware law. Moreover, courts are often called upon to decide substantive legal questions based upon another state's laws. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000). Also, the "ICFA [is not] so unique as to be beyond the comprehension" of another federal court. *See Arion LLC v. LMLC Holdings, Inc.*, No. 18-c-5904, 2018 WL 6590533 at *4 (N.D. Ill. Dec. 14, 2018) (internal quotations omitted) (holding that this factor does not favor either party where an ICFA and other Illinois state law

---

[6] Available at https://www.uscourts.gov/file/25679/download.

claim were to be transferred to Wisconsin). Additionally, because CMB is neither headquartered nor incorporated in Illinois, non-Illinois class members would not have claims under ICFA. Therefore, this factor also favors transfer.

Finally, each state has an interest at stake regarding the desirability of resolving the controversy in each locale and the relationship of each community to the controversy: Illinois has an interest in protecting its citizens, and Delaware has an interest in enforcing valid contractual provisions such as forum-selection clauses. *See id.* at *5 (holding this factor to be neutral). Accordingly, this factor is neutral.

Because two of the three public interest factors favor CMB and one is neutral, Plaintiff will not be able to meet his burden of showing that there is an exceptional circumstance warranting against transfer. Plaintiff's complaint should be transferred or dismissed with instructions to refile in Delaware.

## CONCLUSION

For the reasons stated above, Coffee Meets Bagel requests that the Court dismiss the complaint with prejudice, or in the alternative, dismiss the complaint with instructions to refile in Delaware.

Dated: May 13, 2019

       */s/ Steven P. Mandell*
       Steven P. Mandell

       Steven P. Mandell (ARDC # 6183729)
       **MANDELL MENKES LLC**
       1 N. Franklin, Suite 3600
       Chicago, Illinois 60606
       Telephone: (312) 251-1000
       Facsimile: (312) 251-1010

       Attorneys for Defendant
       *Coffee Meets Bagel, Inc.*

*Of Counsel*:

Tyler Newby
Matthew Becker
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of **DEFENDANT COFFEE MEETS BAGEL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION TO TRANSFER** was served via electronic filing on May 13, 2019, on the following party of record:

> Eugene Y. Turin
> David L. Gerbie
> Jad Sheikali
> **MCGUIRE LAW, P.C.**
> 55 W. Wacker Drive, 9th Fl.
> Chicago, IL 60601
> eturin@mcgpc.com
> dgerbie@mcgpc.com
> jheikali@gmail.com
> *Counsel for Plaintiff*

                                     */s/ Steven P. Mandell*
                                     Steven P. Mandell

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BONELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-02339 |
| v. | ) ) | |
| COFFEE MEETS BAGEL, INC., a Delaware corporation, | ) ) ) | Honorable John Robert Blakey |
| Defendant. | ) ) | |

**DECLARATION OF DAVID MILLER IN SUPPORT OF DEFENDANT COFFEE
MEETS BAGEL, INC.'S MOTION TO DISMISS AND MOTION TO TRANSFER
PLAINTIFF'S CLASS ACTION COMPLAINT**

I, David Miller, hereby declare:

1.  I am the Human Resources and Operations Manager at Coffee Meets Bagel, Inc. ("CMB"), the defendant in this action. I submit this declaration in support of CMB's Motion to Dismiss and Motion to Transfer Plaintiff's Class Action Complaint. I am over eighteen years of age. I have personal knowledge of the matters set forth in this Declaration or base my statements on business records that have been provided to me, and if called to testify, I would testify competently thereto.

2.  Coffee Meets Bagel, Inc. ("CMB") is a Delaware corporation, headquartered in San Francisco, California, with an additional office in Seattle, Washington.

3.  CMB offers a free smartphone app that connects users based on shared interests and other criteria, employing an algorithm that helps provide a curated list of quality matches. CMB's smartphone app is available to download, for free, through both the Apple iOS Store and the Google Play Store. In addition to its free basic services, CMB offers a Premium subscription that provides additional features, like activity reports that include information about potential matches. Users are not required to purchase a Premium subscription, or pay any money to use the service.

4.  According to CMB records stored in the ordinary course of business and made available for me, Mr. Bonell signed up for a free CMB account on or about April 15, 2017.

5.  CMB offers its basic services to users for free, with the only requirement being that each user must first agree to CMB's Privacy Policy and Terms of Service, a copy of which is included on the CMB app and also available at https://coffeemeetsbagel.com/terms. A true and correct copy of the CMB Terms of Service as it would have appeared on April 15, 2017 is

1

attached as **Exhibit 1**. This version of the CMB Privacy Policy and Terms of Service was in effect from November 28, 2016 until November 7, 2017.

6.     The Privacy Policy and Terms of Service includes a choice of law and forum selection clause, stating:

> *Controlling Law and Jurisdiction.* You agree that Delaware law (without giving effect to its conflicts of law principles) will govern this Agreement, the Site and the Services and that any dispute arising out of or relating to this Agreement, the Site or the Services will be subject to the exclusive jurisdiction and venue of the federal and state courts in Delaware.

The Privacy Policy and Terms of Service also includes a section warning users of the risk to personal data they provide:

> **Securing Your Personal Information**
> We endeavor to safeguard personal information to ensure that information is kept private. However, please be aware that unauthorized entry or use, hardware or software failure, the inherent insecurity of the Internet and other factors, may compromise the security of your personal information at any time. As such, we cannot guarantee the security of your personal information.

The CMB Privacy Policy and Terms of Service further states: "*Risk Assumption and Precautions.* You assume all risk when using the Services . . . ." The CMB Privacy Policy and Terms of Service also states that it is the only express agreement between CMB and its users:

> This Agreement, which you accept upon registration for the Services, the Privacy Statement located on the Site, and any applicable payment, renewal, Additional Services terms, comprise the entire agreement between you and Coffee Meets Bagel regarding the use of this Service, superseding any prior agreements between you and Coffee Meets Bagel related to your use of this Site or Services (including, but not limited to, any prior versions of this Agreement).

7.     On February 11, 2019, CMB discovered that an unauthorized party had gained access to a limited list of user information. The data accessed comprised only users' names and email addresses prior to May 2018. After conducting an initial review, CMB notified affected users by email just three days after discovering the data breach, on February 14, 2019. The email notified affected users that users' financial information or passwords had not been affected

2

because CMB does not store that information. The notice further informed users that CMB had engaged forensic security experts to conduct a review of the CMB systems and infrastructure. A true and correct copy of the notice that CMB emailed to affected users on February 14, 2019 is attached as **Exhibit 2**.

8.     CMB does not have any employees in Illinois, and any witnesses that might be required to testify on CMB's behalf are located in different states. CMB includes a forum selection clause in its Terms of Service so that it can keep its costs down and continue to offer its services for free nationwide, without being hauled into court in every jurisdiction across the nation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 13th, 2019 in San Francisco California.

David Miller

# Exhibit 1



PRIVACY & TERMS

# Coffee Meets Bagel Privacy Policy

*Last Updated: July 7th, 2016*

This privacy policy ("Privacy Policy") describes the information collected by Coffee Meets Bagel, Inc. ("Company," "we," "us," "our," or "Service"), how that information may be used, with whom it may be shared, and your choices about such uses and disclosures. By using our website, located at http://www.coffeemeetsbagel.com ("Website"), our mobile apps, and/or other services we provide (collectively, "Coffee Meets Bagel"), you are accepting the practices set forth in this Privacy Policy. If you do not agree with this policy, then you must not access or use Coffee Meets Bagel.

## Information we collect and how we collect it:

**Information collected automatically:** When you use Coffee Meets Bagel, we automatically collect and store certain information about your computer or mobile device and your activities.

This information includes:

- *Mobile Device ID.* Your mobile device's unique ID number (e.g., IMEI).

- *Geographic Location.* Your mobile device's geographic location when you first register for Coffee Meets Bagel through our mobile app.

- *Device Information/Specifications.* Technical information about your computer or mobile device (e.g., type of device, web browser or operating system, IP address) to analyze trends, administer the site, prevent fraud, track visitor movement in the aggregate, and gather broad demographic information.

- *Length and Extent of Usage.* How long you used Coffee Meets Bagel and which services and features you used.

- *Cookies:* We use "cookies" to keep track of some types of information while you are visiting Coffee Meets Bagel or using our services. "Cookies" are very small files placed on your computer, and they allow us to count the number of visitors to our Website and distinguish repeat visitors from new visitors. They also allow us to save user preferences and track user trends. We rely on cookies for the proper operation of Coffee Meets Bagel; therefore if your browser is set to reject all cookies, Coffee Meets Bagel may not function properly. Users who refuse cookies assume all responsibility for any resulting loss of functionality with respect to Coffee Meets Bagel.

- *Web Beacons:* "Web beacons" (also known as "clear gifs" and "pixel tags") are small transparent graphic images that are often used in conjunction with cookies in order to further personalize Coffee Meets Bagel for our users and to collect a limited set of information about our visitors. We may also use web beacons in email communications in order to understand the behavior of our customers, such as whether an email has been opened or acted upon.

**Information you choose to provide:**

Privacy & Terms

*Information We Obtain From Facebook.* In order to register with certain Coffee Meets Bagel apps, you may be asked to sign in using your Facebook login. If you do so, you are authorizing us to access certain Facebook account information, including information about you and your Facebook friends who might be common Facebook friends with other Coffee Meets Bagel users. By allowing us to access your Facebook account, you understand that we may obtain certain information from your Facebook account, including your name, email address, birthday, work history, education history, current city, pictures stored on Facebook, and the names, profile pictures, relationship status, and current cities of your Facebook friends. We only obtain information from your Facebook account that you specifically authorize and grant us permission to obtain.

*Information You Provide Directly to Us.* In addition, when you register with certain Coffee Meets Bagel apps, you must provide certain information, including your email address, zipcode, and gender. You may provide additional information about yourself (such as your school, occupation, current city, etc.) in order to build your Coffee Meets Bagel profile. Any information that you provide in the non-personal identifiable section of your profile will be viewable by your match.

*Emails:* We require an email address from you when you register with certain Coffee Meets Bagel apps. We use your email for both "administrative" (e.g., confirming your registration, notifying of matches) and "promotional" (e.g., newsletters, new product offerings, special discounts, event notifications, special third-party offers) purposes. Email messages we send you may contain code that enables our database to track your usage of the e-mails, including whether the e-mail was opened and what links (if any) were clicked. You may opt-out of receiving promotional emails and other promotional communications from us at any time via the opt-out links provided in such communications, or by e-mailing contact@coffeemeetsbagel.com with your specific request. However, we reserve the right to send you certain communications relating to Coffee Meets Bagel such as service announcements, security alerts, update notices, or other administrative messages) without affording you the opportunity to opt out of receiving such communications.

*Text Messages:* In certain apps, we may require a mobile telephone number in order to connect you with your match. When both you and your match explicitly express mutual interest by both clicking the "LIKE" button within Coffee Meets Bagel, we will seek to connect you with him/her by text message. We will also share your first name at this time with your match. We do not share your phone number with your match during this process, as all introductory text messages are sent using third party generated phone numbers. We may also send text messages to your mobile phone for purposes of communicating with you about Coffee Meets Bagel. By registering with Coffee Meets Bagel you hereby authorize us to send text messages to your mobile phone for any or all of the purposes set forth herein.

*Online Survey Data:* We may periodically conduct voluntary member surveys. We encourage our members to participate in such surveys because they provide us with important information regarding the improvement of Coffee Meets Bagel. We do not link the survey responses to your name or email address, and all responses are anonymous.

## How we use the information

Pursuant to the terms of this Privacy Policy, we may use the information we collect from you for the following purposes:

1. facilitate matches with other Coffee Meets Bagel users;
2. respond to your comments and questions and provide customer service;
3. communicate with you about Coffee Meets Bagel and related offers, promotions, news, upcoming events, and other information we think will be of interest to you;
4. monitor and analyze trends, usage and activities;
5. investigate and prevent fraud and other illegal activities; and
6. provide, maintain, and improve Coffee Meets Bagel and our overall business

*Use for Research.* In addition to the uses outlined above, by using Coffee Meets Bagel, you agree to allow us to anonymously use the information from you and your experiences to

continue our research into successful relationships, including how to create and foster these relationships, so that we may continue to improve the Coffee Meets Bagel experience. This research may be published in our blogs or interviews. However, all of your responses will be kept anonymous, and we assure you that no personal information will be published.

## Sharing Your Information

The information we collect is used to improve the content and the quality of Coffee Meets Bagel, and without your consent we will not otherwise share your personal information to/with any other party(s) for commercial purposes, except: (a) to provide Coffee Meets Bagel, (b) when we have your permission, or (c) or under the following instances:

*Service Providers.* We may share your information with our third-party service providers that support various aspects of our business operations (e.g., analytics providers, security and technology providers, and payment processors).

*Legal Disclosures and Business Transfers.* We may disclose any information without notice or consent from you: (a) in response to a legal request, such as a subpoena, court order, or government demand; (b) to investigate or report illegal activity; or (c) to enforce our rights or defend claims. We may also transfer your information to another company in connection with a merger, corporate restructuring, sale of any or all of our assets, or in the event of bankruptcy.

*Aggregate Data.* We may combine non-PII we collect with additional non-PII collected from other sources for our blog. We also may share aggregated, non-PII with third parties, including advisors, advertisers and investors, for the purpose of conducting general business analysis.

*Sharing Your Facebook Information.* Your Facebook friends' names and one profile picture can be shared with your Coffee Meets Bagel matches who are already friends with these Facebook friends.

## Referring Your Friends

We encourage you to refer your friends to Coffee Meets Bagel by sending us your friends' email addresses or phone numbers. We will keep this information in our database, and send these friends a one-time email or text message containing your name and inviting them to visit our site. This email will also include instructions on how to opt out and unsubscribe from our email list. You agree that you will not abuse this feature by entering the email addresses or phone numbers of those individuals who would not be interested in Coffee Meets Bagel.

## Updating or Removing Account Information

You may review or edit your profile as you wish, by logging into your Coffee Meets Bagel account using the information supplied during the registration process. If you would like to have us delete your account information, we may do so by deactivating your account first and then permanently deleting your account.

## Third Party Sites

Coffee Meets Bagel may contain links to other websites. If you choose to click on a third party link, you will be directed to that third party's website. The fact that we link to a website is not an endorsement, authorization or representation of our affiliation with that third party, nor is it an endorsement of their privacy or information security policies or practices. We do not exercise control over third party websites. These other websites may place their own cookies or other files on your computer, collect data or solicit personal information from you. Other websites follow different rules regarding the use or disclosure of the personal information you submit to them. We encourage you to read the privacy policies or

statements of the other websites you visit.

### Age Restriction

We do not target or allow persons under 18 years of age to use Coffee Meets Bagel, and we do not knowingly collect information from persons under the age of 13. If you are a parent or legal guardian who discovers that your child has provided us with information without your consent, you may contact us at contact@coffeemeetsbagel.com, and we will promptly delete such information from our files.

### Securing Your Personal Information

We endeavor to safeguard personal information to ensure that information is kept private. However, please be aware that unauthorized entry or use, hardware or software failure, the inherent insecurity of the Internet and other factors, may compromise the security of your personal information at any time. As such, we cannot guarantee the security of your personal information.

### Using Coffee Meets Bagel from outside the United States

If you are visiting Coffee Meets Bagel from outside the United States, please be aware that your information may be transferred to, stored, and processed in the United States where our servers are located and our central database is operated. By using our services, you understand and agree that your information may be transferred to our facilities and those third parties with whom we share it as described in this privacy policy.

### Changes to this Privacy Policy

We may update this Privacy Policy from time to time at our sole discretion. When we post changes to this Privacy Policy, we will revise the "last updated" date at the top of this Privacy Policy. We recommend that you check our Website from time to time to inform yourself of any changes in this Privacy Policy or any of our other policies.

### How to Contact Us

If you have any questions about this Privacy Policy, please contact us by email at **contact@coffeemeetsbagel.com**.

# Terms of Service

*Last Updated: November 28, 2016*

This is a legal agreement ("Agreement") between you and Coffee Meets Bagel, Inc. ("Company," "Service," "we," "us," or "our"). By using our website, located at http://www.coffeemeetsbagel.com ("Website"), our mobile app, and/or other services we provide (collectively, "Coffee Meets Bagel"), or otherwise accessing the pages of Coffee Meets Bagel, you become a user and agree to, and are bound by, the terms and conditions of this Agreement for as long as you continue to use the Site or Services. IF YOU DO NOT AGREE TO BE BOUND BY THIS AGREEMENT, DO NOT USE THE SITE OR THE SERVICES. Your use of, or participation in, certain Services may be subject to additional terms, and such terms will be either listed in this Agreement or will be presented to you for your acceptance when you sign up to use such Services.

The Coffee Meets Bagel services consist of a service for single people, including interactive content and community services such as Coffee Meets Bagel community. Coffee Meets Bagel may offer additional services or revise any of the Services, at its discretion, and this Agreement will apply to all additional services or revised Services. Coffee Meets Bagel also reserves the right to cease offering any of the Services.

This Agreement is subject to change by Coffee Meets Bagel in its sole discretion at any time, with or without notice. Your continued use of this Site or the Services after the posting of revisions to this Agreement will constitute your acceptance of such revisions. Please consult the end of this Agreement to determine when the Agreement was last revised.

### Eligibility

1. *Minimum Age.* You must be at least 18 years old to use the Site and to register for the Services. By registering to the Services, you represent and warrant that you are at least 18 years old.

2. *Marital Status.* By requesting to use, registering to use, or using the Singles Service, you represent and warrant that you are not legally married or in a relationship.

3. *Criminal History.* By requesting to use, registering to use, and/or using the Singles Service, you represent and warrant that you have never been convicted of a felony and/or are not required to register as a sex offender with any government entity. COFFEE MEETS BAGEL DOES NOT CURRENTLY CONDUCT CRIMINAL BACKGROUND SCREENINGS ON ITS MEMBERS. However, Coffee Meets Bagel reserves the right to conduct any criminal background check, at any time and using available public records, to confirm your compliance with this subsection.

### Use of Site and Service

As a user of the Site or a user registered to use any of the Services (a "Registered User"), you agree to the following:

1. *Creating an Account on Coffee Meets Bagel.* In order to use Coffee Meets Bagel, you must have or create a Facebook account and sign in using your Facebook login. If you do so, you authorize us to access and use certain Facebook account information, including but not limited to your public Facebook profile and information about Facebook friends you might share in common with other Coffee Meets Bagel users. For more information regarding the information we collect from you and how we use it, please consult our Privacy Policy.

2. *Exclusive Use.* Your account is for your personal use only. You may not authorize others to use your account, and you may not assign or otherwise transfer your account to any other person or entity. You acknowledge that Coffee Meets Bagel is not responsible for third party access to your account that results from theft or misappropriation of your Facebook login credentials you use to sign up for Coffee Meets Bagel. You agree to immediately notify Coffee Meets Bagel of any disclosure or unauthorized use of your login credentials at contact@coffeemeetsbagel.com

3. *Geographic Limitations.* Using the Service may be prohibited or restricted in certain countries. If you use the Service from outside of the United States, you are responsible for complying with the laws and regulations of the territory from which you access or use the Website or Service. You are not located in, under the control of, or a national or resident of any country which the United States has (i) embargoed goods, (ii) identified as a "Specially Designated National", or (iii) placed on the Commerce Department's Table of Deny Orders. Registration for, and use of, the Services are void where prohibited. To the extent that the Services are not legal in your jurisdiction, you may not use the Services. The Services may not be used where prohibited by law.

4. *Information Submitted.* You are solely responsible for, and assume all liability regarding, (i) the information and content you contribute to the Service; (ii) the information and content you post, transmit, publish, or otherwise make available (hereinafter "post") through the Services, including text messages, chat, videos, photographs or profile text

https://web.archive.org/web/20170513200349/https://coffeemeetsbagel.com/terms/

Privacy & Terms

(hereinafter, "content", and (iii) your interactions with other Registered Users through the Services. You may not post or transmit to the Company or other users (either on or off the Service), any offensive, inaccurate, incomplete, abusive, obscene, profane, threatening, intimidating, harassing, racially offensive, or illegal material, or any material that infringes or violates another person's rights (including intellectual property rights, any rights or privacy and publicity).

5. *Risk Assumption and Precautions.* You assume all risk when using the Services, including but not limited to all of the risks associated with any online or offline interactions with others, including dating. You agree to take all necessary precautions when meeting individuals through our service. You understand that Coffee Meets Bagel currently does not conduct criminal background checks on its users. The company also does not verify the statements of its users. The company makes no representations or warranties as to the conduct of users of their compatibility with any current or future users. The company reserves the right to conduct any criminal background checks or other screens at any time and us available public records. The company is not responsible for the conduct of any user. At no event, shall the company be liable, directly or indirectly, for any losses or damages whatsoever, general, special, compensatory, consequential, and/or incidental, arising out of or relating to the conduct of you or anyone else in connection with the use of the service, including without limitation, death, bodily injury, emotional distress, and/or any other damages resulting in from communications or meetings with other users through the service. You should not provide your financial information or wire or otherwise send money, to other users.

6. *No Guarantees.* Coffee Meets Bagel may not be able to provide matches for everyone seeking to use its services. Further, Coffee Meets Bagel makes no guarantees as to the number or frequency of matches through our service, or to such matches' ability, desire or criteria to communicate with any user. You understand that Coffee Meets Bagel makes no guarantees, either explicit or implied, regarding your ultimate compatibility with individuals you meet through the our service or as to the conduct of such individuals.

7. *Reporting of Violations.* You will promptly report to Coffee Meets Bagel any violation of the Agreement by others, including but not limited to, Registered Users.

8. *Content Removal.* Coffee Meets Bagel reserves the right, but has no obligation, to monitor the information or material you submit to the Services or post in the public areas of the Services. Coffee Meets Bagel will have the right to remove any such information or material that in its sole opinion violates, or may violate, any applicable law or either the letter or spirit of this Agreement or upon the request of any third party.

9. *No False Information.* You will not provide inaccurate, misleading or false information to Coffee Meets Bagel or to any other user. If information provided to Coffee Meets Bagel or another user subsequently becomes inaccurate, misleading or false, you will promptly notify Coffee Meets Bagel of such change.

10. *No Advertising or Commercial Solicitation.* You will not advertise or solicit any user to buy or sell any products or services through the Site or Services. You may not transmit any chain letters, junk or spam e-mail to other users. Further, you will not use any information obtained from the Services in order to contact, advertise to, solicit, or sell to any user without their prior explicit consent. If you breach the terms of this subsection and send or post unsolicited bulk email, "spam" or other unsolicited communications of any kind through the Services, you acknowledge that you will have caused substantial harm to Coffee Meets Bagel, but that the amount of such harm would be extremely difficult to ascertain. As a reasonable estimation of such harm, you agree to pay Coffee Meets Bagel $50 for each such unsolicited communication you send through the Services.

11. *Unique and Bona Fide Profile.* As a Registered User of the Singles Service, you will create only one unique profile. In addition, your use of the Singles Service must be for bona fide relationship-seeking purposes in order to maintain the integrity of the Singles Service (for example, you may not become a Registered User solely to compile a report of compatible singles in your area, or to write a school research paper). Not all registered users are available for matching. From time to time, Coffee Meets Bagel may create test profiles in order to monitor the operation of the Services.

https://web.archive.org/web/20170513200349/https://coffeemeetsbagel.com/terms/

Privacy & Terms

12. *Selection of Profiles*. Our service provides exclusive matching, and your profile will be selected to introduce you to specific matches based on our algorithm. You will be under no obligation to meet with or communicate with the match(es) we may introduce to you.

13. *No Harassment of Coffee Meets Bagel Employees or Agents*. You will not harass, annoy, intimidate or threaten any Coffee Meets Bagel employees or agents engaged in providing any portion of the Services to you.

## Proprietary Rights

1. *Ownership of Proprietary Information*. You hereby acknowledge and agree that Coffee Meets Bagel is the owner of highly valuable proprietary information, including without limitation, the matching algorithm, profiles, and profile questions. Coffee Meets Bagel owns and hereby retains all proprietary rights in the Services and the Site, including but not limited to, all Confidential Information.

2. *No Use of Confidential Information*. You will not post, copy, modify, transmit, disclose, show in public, create any derivative works from, distribute, make commercial use of, or reproduce in any way any (i) Confidential Information or (ii) other copyrighted material, trademarks, or other proprietary information accessible via the Services, without first obtaining the prior written consent of the owner of such proprietary rights.

3. *Other Users' Information*. Other Registered Users may post copyrighted information, which has copyright protection whether or not it is identified as copyrighted. You agree that you will not copy, modify, publish, transmit, distribute, perform, display, commercially use, or sell any Coffee Meets Bagel or third party proprietary information available via the Services or the Site.

4. *License to Posted Content*. By posting information or content to any profile pages or public area of the Services such as Advice, you automatically grant, and you represent and warrant that you have the right to grant, to Coffee Meets Bagel and its users, an irrevocable, perpetual, non-exclusive, fully-paid, worldwide license to use, reproduce, publicly perform, publicly display and distribute such information and content, and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sub-licenses of the foregoing. From time to time, we may create, test or implement new features or programs on the Site (e.g., rating of user photos or profiles by other users) in which you may voluntarily choose to participate, in accordance with the additional terms and conditions of such features or programs. By your voluntary participation in such features or programs, you grant us the rights stated in this subsection in connection with the additional terms and conditions (if any) of such features or programs.

## User Information

*Privacy Statement*. For information about the collection and possible use of information and material provided by you, please read our Privacy Statement above. By using the Site or the Services, you are consenting to the terms of Coffee Meets Bagel's Privacy Statement.

*No Contact Information*. You agree that you will not post any e-mail addresses, personal website address or profile page you may have on a third party website, or other contact information in areas other than those specifically designated for this information, or in any other communications you may have with other users. You may, at your discretion, exchange such information after you are mutually connected through the company's private message line.

*Disclosure By Law.* You acknowledge and agree that Coffee Meets Bagel may disclose information you provide if required to do so by law, at the request of a third party, or if we, in our sole discretion, believe that disclosure is reasonable to (1) comply with the law, requests or orders from law enforcement, or any legal process (whether or not such disclosure is required by applicable law); (2) protect or defend Coffee Meets Bagel's, or a third party's, rights or property; or (3) protect someone's health or safety, such as when harm or violence against any person (including the user) is threatened.

*Disclosure to Protect Abuse Victims.* Notwithstanding any other provision of this Agreement or the Privacy Statement, Coffee Meets Bagel reserves the right, but has no obligation, to disclose any information that you submit to the Services, if in its sole opinion, Coffee Meets Bagel suspects or has reason to suspect, that the information involves a party who may may be the victim of abuse in any form. Abuse may include, without limitation, elder abuse, child abuse, spousal abuse, neglect, or domestic violence. Information may be disclosed to authorities that Coffee Meets Bagel, in its sole discretion, deems appropriate to handle such disclosure Appropriate authorities may include, without limitation, law enforcement agencies, child protection agencies, or court officials. You hereby acknowledge and agree that Coffee Meets Bagel is permitted to make such disclosure.

*Use of Anonymous Information for Research.* By using the Services, you agree to allow Coffee Meets Bagel to anonymously use the information from you and your experiences through the Services to continue Coffee Meets Bagel's research into successful relationships and to improve the Services. This research, conducted by psychologists and behavior research scientists, may be published in academic journals. However, all of your responses will be anonymous, and we will not publish research containing your personal identifying information.

*Links to Third-Party Web Sites / Dealings with Advertisers and Sponsors.* The Services may contain links to web sites of third-parties, including without limitation, advertisers, which are not under the control of Coffee Meets Bagel, and Coffee Meets Bagel is not responsible for the content of any linked site or any link contained in a linked site, or any changes or updates to such web sites. Coffee Meets Bagel provides these links to you only as a convenience, and the inclusion of any link does not imply that Coffee Meets Bagel endorses or accepts any responsibility for the content on such third-party web site. Your correspondence or business dealings with, or participation in promotions of, advertisers or sweepstakes sponsors found on or through the Services (including payment and delivery of related goods or services, any personal information or opt-in contact information voluntarily given to advertisers and sweepstakes sponsors, and any other terms, conditions, warranties or representations associated with such dealings) are solely between you and such advertiser or sweepstakes sponsor. You agree that Coffee Meets Bagel will not be responsible or liable for any loss or damage of any sort incurred as the result of any such dealings, including the sharing of the information you supply to Coffee Meets Bagel with advertisers or sweepstakes sponsors, or as the result of the presence of such advertisers on the Services. Please visit our Privacy Statement to learn more about how we use your information.

## Disclaimer of Warranty

1. *No Warranties.* THIS SECTION WILL APPLY TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW. COFFEE MEETS BAGEL PROVIDES THE SERVICES ON AN "AS IS" AND "AS AVAILABLE" BASIS AND GRANTS NO WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE WITH RESPECT TO THE SERVICES OR THE SITE (INCLUDING ALL INFORMATION CONTAINED THEREIN), INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. COFFEE MEETS BAGEL DOES NOT WARRANT THAT YOUR USE OF THE SERVICES WILL BE SECURE, UNINTERRUPTED, ALWAYS AVAILABLE, ERROR-FREE OR WILL MEET YOUR REQUIREMENTS, OR THAT ANY DEFECTS IN THE SERVICES WILL BE CORRECTED. COFFEE MEETS BAGEL DISCLAIMS LIABILITY FOR, AND NO WARRANTY IS MADE WITH RESPECT TO, THE CONNECTIVITY AND AVAILABILITY OF THE SERVICES.

2. *Third Party Content.* Opinions, advice, statements, offers, or other information or content made available through the Services, but not directly by Coffee Meets Bagel, are those of their respective authors, and should not necessarily be relied upon. Such authors are solely responsible for such content. COFFEE MEETS BAGEL DOES NOT: (i) GUARANTEE THE

https://web.archive.org/web/20170513200349/https://coffeemeetsbagel.com/terms

ACCURACY, COMPLETENESS OR USEFULNESS OF ANY INFORMATION PROVIDED ON THE SERVICES, OR (ii) ADOPT, ENDORSE OR ACCEPT RESPONSIBILITY FOR THE ACCURACY OR RELIABILITY OF ANY OPINION, ADVICE, OR STATEMENT MADE BY ANY PARTY OTHER THAN COFFEE MEETS BAGEL. UNDER NO CIRCUMSTANCES WILL COFFEE MEETS BAGEL BE RESPONSIBLE FOR ANY LOSS OR DAMAGE RESULTING FROM ANYONE'S RELIANCE ON INFORMATION OR OTHER CONTENT POSTED ON THE SERVICES, OR TRANSMITTED TO OR BY ANY USERS.

3. *Beta Features.* From time to time, Coffee Meets Bagel may offer new "beta" features or tools with which its users may experiment on the Services. Such features or tools are offered solely for experimental purposes and without any warranty of any kind, and may be modified or discontinued at Coffee Meets Bagel's sole discretion. The provisions of this Disclaimer of Warranty section apply with full force to such features or tools.

## Limitation of Liability

1. *Incidental Damages and Aggregate Liability.* IN NO EVENT WILL COFFEE MEETS BAGEL BE LIABLE FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL OR INDIRECT DAMAGES ARISING OUT OF OR RELATING TO THE USE OR INABILITY TO USE THE SERVICES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OR CORRUPTION OF DATA OR PROGRAMS, SERVICE INTERRUPTIONS AND PROCUREMENT OF SUBSTITUTE SERVICES, EVEN IF COFFEE MEETS BAGEL KNOWS OR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

2. *No Liability for non-Coffee Meets Bagel Actions.* TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL COFFEE MEETS BAGEL BE LIABLE FOR ANY DAMAGES WHATSOEVER, WHETHER DIRECT, INDIRECT, GENERAL, SPECIAL, COMPENSATORY, CONSEQUENTIAL, AND/OR INCIDENTAL, ARISING OUT OF OR RELATING TO THE CONDUCT OF YOU OR ANYONE ELSE IN CONNECTION WITH THE USE OF THE SERVICES, INCLUDING WITHOUT LIMITATION, BODILY INJURY, EMOTIONAL DISTRESS, AND/OR ANY OTHER DAMAGES RESULTING FROM COMMUNICATIONS OR MEETINGS WITH OTHER REGISTERED USERS OF THE SERVICES. THIS INCLUDES ANY CLAIMS, LOSSES OR DAMAGES ARISING FROM THE CONDUCT OF USERS WHO HAVE REGISTERED UNDER FALSE PRETENSES OR WHO ATTEMPT TO DEFRAUD OR HARM YOU.

3. *Information Verification.* Coffee Meets Bagel and its contractors may use various ways of verifying information that users have provided. However, none of those ways are perfect, and you agree that Coffee Meets Bagel and its contractors will have no liability to you arising from any incorrectly verified information.

## Indemnification

You agree to indemnify, defend and hold harmless Coffee Meets Bagel, its officers, directors, employees, agents and third parties, for any losses, costs, liabilities and expenses (including reasonable attorneys' fees) relating to or arising out of (a) your use of or inability to use the Site or Services, (b) any user postings made by you, (c) your violation of any terms of this Agreement or your violation of any rights of a third party, or (d) your violation of any applicable laws, rules or regulations. Coffee Meets Bagel reserves the right, at its own cost, to assume the exclusive defense and control of any matter otherwise subject to indemnification by you, in which event you will fully cooperate with Coffee Meets Bagel in asserting any available defenses.

## Complaints / Law Enforcement Contact

To resolve a complaint regarding the Service, you e-mail us at **contact@coffeemeetsbagel.com**

## Communication and Privacy

We may use your email address to send you messages notifying you of important changes to the Services or special offers.

## Term and Termination

This Agreement will become effective upon your acceptance of the Agreement by your use of the Site or the Services and will remain in effect in perpetuity unless terminated hereunder. Either you or Coffee Meets Bagel may terminate your account at any time, for any reason or no reason, without explanation, effective upon sending written notice to the other party. Coffee Meets Bagel reserves the right to immediately suspend or terminate your access to any of the Services, without notice, for any reason or no reason. We also reserve the right to remove your account information or data from our Services and any other records at any time at our sole discretion. In the event your access to any of the Services is suspended due to the breach of this Agreement, you agree that all fees then paid to Coffee Meets Bagel by you will be nonrefundable and all outstanding or pending payments will immediately be due. You may terminate your account by visiting Settings page within the app.

## Cancellations

1. *Cancellation At Any Time.* Except as otherwise stated in this section, you may cancel your registration or subscription to any Services at any time during the term of such registration or subscription by accessing the "Settings" tab, clicking on "Deactivate My Membership" or "Put on Hold" and providing the information requested. Coffee Meets Bagel is not responsible for refunding for subscription already purchased.

## General Provisions

1. *Controlling Law and Jurisdiction.* You agree that Delaware law (without giving effect to its conflicts of law principles) will govern this Agreement, the Site and the Services and that any dispute arising out of or relating to this Agreement, the Site or the Services will be subject to the exclusive jurisdiction and venue of the federal and state courts in Delaware. You acknowledge and agree that any violation of this Agreement may cause Coffee Meets Bagel irreparable harm, and therefore agree that Coffee Meets Bagel will be entitled to seek extraordinary relief in court, including but not limited to temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security, in addition to and without prejudice to any other rights or remedies that Coffee Meets Bagel may have for a breach of this Agreement.

2. *Miscellaneous.* This Agreement, which you accept upon registration for the Services, the Privacy Statement located on the Site, and any applicable payment, renewal, Additional Services terms, comprise the entire agreement between you and Coffee Meets Bagel regarding the use of this Service, superseding any prior agreements between you and Coffee Meets Bagel related to your use of this Site or Services (including, but not limited to, any prior versions of this Agreement). The FAQ's found on the Services are for informational purposes only and are not deemed to be part of this Agreement. Unless otherwise explicitly stated, the Agreement will survive termination of your registration to the Service. The failure of Coffee Meets Bagel to exercise or enforce any right or provision of this Agreement does not constitute a waiver of such right or provision. If any provision of this Agreement is held invalid, the remainder of this Agreement will continue in full force and effect. Regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to the use of the Site or this Agreement must be filed within one (1) year after such claim or cause of action arose or be forever barred. The section titles in this Agreement are for convenience only and have no legal or contractual effect.

## Digital Millennium Copyright Act Notice

If you believe that your copyrighted work has been copied in a way that constitutes copyright infringement and is accessible on this Site, please notify Coffee Meets Bagel at contact@coffeemeetsbagel as set forth in the Digital Millennium Copyright Act of 1998 (DMCA). For your complaint to be valid under the DMCA, you must provide the following information in writing: 1. An electronic or physical signature of a person authorized to act on behalf of the copyright owner; 2. Identification of the copyrighted work that you claim is being infringed; 3. Identification of the material that is claimed to be infringing and where it is located on the Site; 4. Information reasonably sufficient to permit Coffee Meets Bagel to contact you, such as your address, telephone number, and e-mail address; 5. A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or law; and 6. A statement, made under penalty of perjury, that the above information is accurate, and that you are the copyright

Privacy & Terms

owner or are authorized to act on behalf of the owner. The above information must be submitted to Coffee Meets Bagel.

*Revision Date. This Agreement was last revised on November 28, 2016.*

HOME    BLOG    STORIES    PRESS    JOBS    REVIEWS    PRIVACY & TERMS    CONTACT US

Don't have the app? Download CMB today.

# Exhibit 2

# Important Information About Your Coffee Meets Bagel Account Security

Today at 3:18 AM



Hello,

We recently discovered that some data from your Coffee Meets Bagel account may have been acquired by an unauthorized party. We would like to make sure you have the facts about what happened, what information was involved, and the steps we are taking to help protect you.

**What happened?**
On February 11, 2019, we learned that an unauthorized party gained access to a partial list of user details. Once we became aware, we quickly took steps to determine the nature and scope of the problem.

**What information was involved?**
The affected information only includes your name and email address prior to May 2018. **As a reminder, we never store any financial information or passwords.**

**What are we doing**
We have taken steps to protect our community, including the following:

• We have engaged forensic security experts to conduct a review of our systems and infrastructure.
• Vendor and external systems are being audited and reviewed to ensure there are no compliance issues or third party breaches.
• We continue to monitor for suspicious activity and we are coordinating with law enforcement authorities regarding this incident.
• We continue to make enhancements to our systems to detect and prevent unauthorized access to user information.

**What you can do**
As always, we recommend you take extra caution against any unsolicited communications that ask you for personal data or refer you to a web page asking for personal data. We also recommend avoiding clicking on links or downloading attachments from suspicious emails.

The security of your information is important to us, and we apologize for any inconvenience this may have caused you. As always, if you have any questions or need any additional information, please do not hesitate to contact us at
contact@coffeemeetsbagel.com